**DIAMOND SCIENTIFIC CO., Plaintiff,**

v.

**AMBICO, INC. and Clarence Joseph Welter, Defendants.**

**Civ. No. 86–796–A.**

United States District Court, S.D. Iowa, C.D.

Aug. 12, 1987.

**164**

Edmund Sease, Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, Iowa, for plaintiff.

Dick Jensen, Lyle Simpson, Dreher, Wilson, Simpson, Jensen, & Adams, P.C., Des Moines, Iowa, and Bruce Mackler, Iver Cooper, Mackler, Cooper and Gibbs, Washington, D.C., for defendants.

## RULING AND ORDER

STUART, District Judge.

This is an action for patent infringement brought by the assignee of the patents against the inventor-assignor and the company of which he is founder, majority stockholder and president. As affirmative defenses to that action, defendants allege: (1) in the second affirmative defense that the patents are void and invalid under 35 U.S.C. § 112 relating to the specification requirements; (2) in the third affirmative defense, that the patents are void and invalid because they lack the novelty required by 35 U.S.C. § 102; in the sixth affirmative defense, that the patents are void and invalid under 35 U.S.C. § 103 because of prior art and obviousness.

Plaintiff has moved to strike these affirmative defenses on the ground that an assignor is estopped from urging the invalidity of the patents that he has assigned to another. Defendants claim that the doctrine of assignor estoppel is no longer a viable doctrine. That is the prime issue before the court.

In 1959 Clarence J. Welter was employed by Diamond Laboratories, Inc., plaintiff's predecessor. While so employed, he invented "Transmissible Gastroenteritis Vaccines and Methods of Producing the Same." On September 18, 1964, while he was making application for Letters Patent, he assigned all his right in any patents obtained to Diamond Laboratories, Inc. Based upon Welter's application the following patents were granted to plaintiff's predecessor.

Patent No. 3,479,430 November 18, 1969

Patent No. 3,585,108 June 15, 1971

Patent No. 3,704,203 November 28, 1972

In connection with his patent applications Welter signed an "Oath, Power of Attorney and Petition" containing, in part, the following language:

I have read the foregoing specification and claims and I verily believe I am the original, first and sole inventor of the invention in [TGE vaccines] described and claimed therein; that I do not know and do not believe that this invention was ever known or used before my invention thereof, or patented or described in any printed publication in any country, before my invention thereof; or more than one year prior to this application, or in public use or sale in the United States for more than one year prior to this application. . . .

In 1974 Welter left plaintiff's employment and formed Ambico, Inc., the defendant corporation, and serves as its president. Since its formation, Ambico Inc. has made and sold Transmissible Gastroenteritis (TGE) vaccine.

Plaintiff filed this action October 31, 1986 alleging that the defendants are infringing upon these patents by making, using, and/or selling of modified live virus [TGE] vaccine, and instructing others to use vaccine made and supplied by defendants in an infringing manner.

## DISCUSSION

In *Westinghouse Co. v. Formica*, 266 U.S. 342, 349, 45 S.Ct. 117, 119–20, 69 L.Ed. 316 (1924) the United States Supreme Court approved of the following rule:

> [A]n assignor of a patent right is estopped to attack the utility, novelty or validity of a patented invention which he has assigned or granted as against any one claiming the right under his assignment or grant. As to the rest of the world, the patent may have no efficacy and create no right of monopoly; but the assignor can not be heard to question the right of his assignee to exclude him from its use.

This rule is directly on point and if this is still the law, plaintiffs' motion to strike the affirmative defenses must be granted. However, defendants argue that the Supreme Court decision in *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) made the assignor estoppel rule defunct and cite recent authorities so holding.

*Lear, Inc.* dealt with the obligation of a licensee to pay royalties while challenging the validity of the patent on which the royalties were to be paid. The California Court, relying upon *Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 836, 70 S.Ct. 894, 899, 94 L.Ed. 1312 (1950) held that a licensee operating under a license agreement is estopped to deny the validity of his licensor's patent in a suit by the licensor for royalties under the agreement. The Supreme Court in *Lear* granted certiorari "to reconsider the validity of the Hazeltine rule in the light of our recent decisions emphasizing the strong federal policy favoring free competition in ideas which do not merit patent protection." 395 U.S. at 656, 89 S.Ct. at 1904. The Supreme Court held that *Hazeltine* "should no longer be regarded as sound law with respect to its 'estoppel' holding and that holding is now overruled." 395 U.S. at 671, 89 S.Ct. at 1911.

Justice Harlan thoroughly reviewed the pertinent authorities and concluded that:

> The uncertain status of licensee estoppel in the case law is a product of judicial efforts to accomodate the competing demands of the common law of contracts and the federal law of patents. On the one hand, the law of contracts forbids a purchaser to repudiate his promises simply because he becomes dissatisfied with the bargain he has made. On the other hand, federal law requires that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent.

395 U.S. at 668, 89 S.Ct. at 1910.

Justice Harlan pointed out that the equities of the licensor who seeks to recover royalties despite his licensee's attempts to show that the patent is invalid "are far from compelling" and they "do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." 395 U.S. at 670, 89 S.Ct. at 1911.

The cases appear to accept the proposition that there are competing demands between contract law and patent law. These demands must be balanced under the particular facts and in doing so the equities, principles of fair dealing, and interests of the public and the parties are considered. Completely different considerations are involved in licensee estoppel and assignor estoppel. When a patentee licensor is attempting to collect royalties on a patent of questionable validity from the licensee, he is seeking continued payments for a patent that may be worthless. The licensee would be required to charge the public more for the product to recover back the royalties paid. The public would "continually be required to pay tribute to would-be monopolists without need or justification." 395 U.S. at 670, 89 S.Ct. at 1911. A licensor should not receive consideration for a worthless invention. It is proper for the contract doctrine to give way to the demands of the public interest in that situation.

In a situation where, as here, an assignee of a patent for valuable consideration, is suing the patentee-assignor for infringement of the patent assigned, the equities

are with the assignee. The assignor has been paid for the patent and still can challenge its validity if not estopped. Assignor estoppel binds only the assignor "from denying that he sold a patent when he purported to sell it, leaving the whole rest of the world free to assert the validity or novelty of the patent." Dissent of Frankfurter, J. in *Scott Paper Co. v. Marcalus Co.*, 326 U.S. 249, 260, 66 S.Ct. 101, 106, 90 L.Ed. 47 (1945).

The essence of the principle of fair dealing which binds the assignor of a patent in a suit by an assignee, even though it turns out that the patent is invalid or lacks novelty, is that in this relation the assignor is not part of the general public but is apart from the general public. The isolated, individual relation between the assignor and assignee, due to the sale by the assignor of something which he afterwards should not be permitted to say was nothing is the basis of the doctrine of fair dealing which operates against him and against nobody else. That doctrine is wholly consistent with the right of the general public to the free and unfettered use of a patent after its time has expired.... As against the loss to the public of one possible manufacturer is put the public policy of fair dealing between man and man.

Frankfurter, J., dissenting *Scott Paper Co.*, 326 U.S. at 262, 66 S.Ct. at 107.

Patent estoppel has not fared well in the courts since the Supreme Court, while reaffirming assignor estoppel as the general rule, permitted the state of the art to be used "to construe and narrow the claims of the patent, conceding their validity" in *Formica*, 266 U.S. at 351, 45 S.Ct. at 120. Licensee estoppel was eliminated by *Lear, Inc. v. Adkins*, 395 U.S. at 671, 89 S.Ct. at 1911, when the court overruled *Hazeltine.*

In *Scott Paper Co.*, the majority found it unnecessary to pursue "logical refinements" of the assignor estoppel doctrine or to determine whether it should be rejected. The court held that the patent laws themselves foreclosed the use of the doctrine of estoppel because the "accused machine is

precisely that of an expired patent." *Scott Paper Co.*, 326 U.S. at 254, 66 S.Ct. at 103. As pointed out in Frankfurter's dissent and in *Lear, Inc.*, 395 U.S. at 666, 89 S.Ct. at 1909, "The Scott exception had undermined the very basis of the 'general rule'". However, the failure of the Supreme Court to seize that opportunity to reject the assignor estoppel rule outright, indicates that the Supreme Court was not ready to reject it in all situations. Even though the Supreme Court did reject the licensee estoppel rule in *Lear*, it recognized the existence of assignor estoppel principles although they were no longer considered the general rule.

Most of the cases that have considered the assignor estoppel rule since *Scott Paper* and *Lear*, have uniformly rejected it, rather summarily.

By a four paragraph opinion in *Coastal Dynamics Corporation v. Symbolic Displays, Inc.*, 469 F.2d 79 (9th Cir.1972) the Court of Appeals for the Ninth Circuit stated that it was not persuaded that assignor estoppel requires any different rule than licensee estoppel.

In *National Welding & Co. v. Hammon Precision & Co.*, 165 F.Supp. 788, 792 (N.D.Cal.1958), the court recognized the trend favoring the public interest in the unrestricted use of a patented product over an assignee's limited monopoly growing out of the assignor's assignment and agreed. The competing demands and equities were not discussed.

In *Brand Plastics Company v. Dow Chemical Company*, 267 F.Supp. 1010, 1013 (C.D.Cal.1967), the court citing *Douglass v. United States Appliance Corp.*, 177 F.2d 98 (9th Cir.1949) considered patent estoppel "a doctrine of very limited validity" and not to be applied in the same automatic manner as estoppel by deed. After examining the doctrine of equitable estoppel by conduct the court said:

If these elements were present in the case at hand, I would have considerable difficulty in concluding that the public interest in striking down invalid patents requires this court to allow the assignor of a patent to benefit from such unsavory conduct.

In *Brand Plastics* the assignee's experts had considerable reservations about the patentability of the invention and the assignee prepared the patent application. The Court said: "Never having urged upon Dow a contention that his process did meet the requirements of a patentable invention, Dr. McCurdy would not be foreclosed from asserting now that it did not." *Ibid.* 1014

Other cases which refused to apply the doctrine of assignor estoppel are *Nationwide Chemical Corp. v. Wright,* 458 F.Supp. 828 (M.D.Fla.1976); *Interconnect Planning Corp. v. Feil,* 543 F.Supp. 610, 613 (S.D.N.Y.1982); *Marvacon Industries, Inc. v. Thermacon Industries, Inc.,* 209 U.S.P.Q. 932.935 (1980); *Custom Chair Lounge Co. v. True-Fit Chair, Inc.,* 1 U.S. P.Q.2d 1353 (1986).

In *Roberts v. Sears, Roebuck & Co.,* 573 F.2d 976, 982 (7th Cir.1978) the Seventh Circuit Court of Appeals did not apply the *Lear* reasoning because it was an assignor estoppel situation and the "primary evil that the court in *Lear* sought to end—that the public might have to pay tribute to a 'would be monopolist'—is completely irrelevant to this case." In addition, the *Lear* court's analysis "initiated with an assessment of 'the spirit of contract law, which seeks to balance the claims of promisor and promisee in accord with the requirements of good faith'.... Only after the Court satisfied itself that the equities were balanced on each side did it proceed to a consideration of the needs of patent law and the public interest."

If there is any vitality at all left in the assignor estoppel doctrine, the court believes it should be applied in circumstances like this. When the assignor-inventor has a large part in the preparation of the patent application, signs the Oath, Power of Attorney and Petition attesting to his belief in the validity of the patent and assigns it to another for valuable consideration, he should be estopped from defending a patent infringement case by proving that what he assigned was worthless. Only he and those standing in privity with him would be estopped. Anyone else in the general public could attack the patents' validity.

The assignor-assignee cases since *Lear,* like this one, have involved assignments of patents on products invented by an employee to the employer. Would the results have been the same if the assignee had paid the assignor a million dollars for the patent? Assignor estoppel should not depend upon the type of valuable consideration involved. If the distinction would be made on that basis, we would be saying in effect an employment contract requiring an employee inventor to assign his invention made on the job is against public policy. This has never been suggested.

In my opinion this case presents one of the limited circumstances in which the assignor estoppel doctrine should be applied.

IT IS THEREFORE ORDERED that the plaintiff's motion to strike affirmative defenses two, three and six is granted.