**DIAMOND SCIENTIFIC CO.,**
**Plaintiff–Appellee,**

v.

**AMBICO, INC. and Clarence Joseph Welter, Defendants–Appellants.**

**Appeal No. 88–1042.**

United States Court of Appeals, Federal Circuit.

June 3, 1988.

Edmund J. Sease, Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, Iowa, argued for plaintiff-appellee.

Iver P. Cooper, Mackler, Cooper & Gibbs, Washington, D.C., argued for defendants-appellants. With him on the brief was Dick L. Jensen, Dreher, Wilson, Simpson, Jensen, Sellers, Adams & Kaiser, of Des Moines, Iowa.

Before FRIEDMAN, DAVIS and NEWMAN, Circuit Judges.

DAVIS, Circuit Judge.

This appeal from an order of the United States District Court for the Southern District of Iowa granting plaintiff's motion to strike three affirmative defenses is before us by permission, to decide whether the doctrine of assignor estoppel prevents this assignor-inventor and his company, who are sued for infringement, from challenging the validity of the patents previously assigned by him to the assignee. We affirm.

Appellee Diamond Scientific Co. (Diamond) employed Dr. Clarence Welter from 1959 until 1974. During that time, Dr. Welter invented a vaccine against gastroenteritis in swine, and filed a patent application for "Transmissible Gastroenteritis Vaccines and Methods of Producing the Same." While making this patent application, Dr. Welter assigned all of the rights in the patents to Diamond Laboratories, Inc. (the predecessor of Diamond). Eventually, Diamond's predecessor was awarded the following patents from this application: No. 3,479,430; No. 3,585,108; and No. 3,704,203.

In 1974 Dr. Welter left Diamond, where he had become a vice-president, and formed his own company, appellant Ambico, Inc. (Ambico). Ambico began manufacturing and selling a gastroenteritis vaccine for swine. Diamond began this patent infringement suit against Ambico · and Dr. Welter, claiming infringement of the three patents that Dr. Welter had assigned to Diamond. The defendants' answer raised, among other defenses, three grounds for patent invalidity: 35 U.S.C. § 112 (inade-quate disclosure); 35 U.S.C. § 102 (lack of novelty); and 35 U.S.C. § 103 (obviousness). Diamond's motion to strike these three defenses asserted the doctrine of assignor estoppel. The district court granted Diamond's motion, 666 F.Supp. 163 (S.D. Iowa 1987), and this appeal followed.

The central issue to be decided is whether in this case the assignor-inventor of the patents (or a company in privity with him) can defend the infringement suit brought by the assignee by challenging the validity of the patents previously assigned, or whether the equitable doctrine of assignor estoppel prevents the assignor from claiming that the patents are invalid.

I.

This is the first opportunity presented to this court to examine the doctrine of assignor estoppel. Although the Supreme Court has examined this doctrine or a related doctrine—licensee estoppel—several times this century, its opinions have hardly been definite or definitive.

Beginning with *Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co.*, 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316 (1924), the Supreme Court endorsed the rule that an assignor can be estopped from challenging the validity of the assigned patent when the assignor is sued by the assignee for infringement of the assigned patent. This estoppel bars only the assignor (and those in privity with the assignor), leaving everyone else free to try to invalidate the patent. The Court did, however, limit the estoppel by allowing the assignor to present evidence of the state of the art for the sole purpose of construing and narrowing the claims of the patent. *Id.* at 350, 45 S.Ct. at 120. This accommodation permitted the assignor to defend against the infringement suit by attempting to show that the accused device fell outside the proper scope of the claims of the patent in suit, yet prevented the assignor from attacking the patent's validity.

In *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47 (1945), the Court sidestepped a reexami-

nation of the merits of the assignor estoppel doctrine by once more carving an exception from the general rule. In that case, the defendant-assignor contended that the patent claimed to be infringed represented the same invention as a previously expired patent found in the prior art. The Court held that the doctrine of assignor estoppel was not available to the assignee "to foreclose the assignor of a patent from asserting the right to make use of the prior art invention of an expired patent, which anticipates that of the assigned patent...." *Id.* at 257, 66 S.Ct. at 105. The Court found that the application of the doctrine in that instance was incompatible "with the patent laws which dedicate to public use the invention of an expired patent." *Id.* at 258, 66 S.Ct. at 105. *Scott Paper* was a less-than-enthusiastic acknowledgement of assignor estoppel, but the Court was careful to distinguish its decision from previous applications of the doctrine: "To whatever extent that doctrine may be deemed to have survived the *Formica* decision or to be restricted by it, we think that case is not controlling here." *Id.* at 254, 66 S.Ct. at 103.

*Scott Paper* is the most recent word from the Supreme Court on assignor estoppel. However, in *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), the Court addressed the somewhat analogous doctrine of licensee estoppel. Reasoning that "the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain[,]" the Court explicitly abolished licensee estoppel. Although *Lear* involved the licensing, rather than the assignment, of a patent, the opinion reviewed the history of "patent estoppel" in general, and indicated that the Court's previous decisions had sapped much of the vitality, if not the logic, from the assignment estoppel doctrine as well. Recalling *Scott Paper,* the Court asked, "If patent policy forbids estoppel when the old owner attempts to show that he did no more than copy an expired patent, why should not the old owner also be permitted to show that the invention lacked novelty because it could be found in a technical journal or because it was obvious to one knowledgeable in the art? ... The *Scott* exception had undermined the very basis of the 'general rule.'" *Lear,* 395 U.S. at 666, 89 S.Ct. at 1909.

*Lear* resolved the issue of licensee estoppel by writing its obituary; but for courts wrestling with assignor estoppel it was less clear whether *Lear* had also sounded the death knell for that doctrine. Certainly, there was nothing in its holding that eliminated the doctrine. Beyond the questioning dicta in *Lear,* the Court has left assignment estoppel untouched for the past nineteen years.

## II.

The federal court cases, decided either shortly before *Lear* or since then, that discuss the doctrine of assignor estoppel reveal some uncertainty about the continued vitality of the doctrine. At least two courts have acknowledged the doctrine, although rejecting on the facts its application to the cases before them. *Nationwide Chemical Corp. v. Wright,* 458 F.Supp. 828, 840, 192 USPQ 95, 105 (M.D.Fla.1976), *aff'd* 584 F.2d 714 (5th Cir.1978); *Brand Plastics Co. v. Dow Chemical Co.,* 267 F.Supp. 1010, 1013, 154 USPQ 140, 142–43 (C.D.Cal.1967). At least five other courts have indicated their belief that assignor estoppel is no longer the prevailing rule of law. *See Coastal Dynamics Corp. v. Symbolic Displays, Inc.,* 469 F.2d 79, 175 USPQ 81 (9th Cir.1972) (per curiam); *Contour Chair Lounge Co. v. True–Fit Chair, Inc.,* 648 F.Supp. 704, 1 USPQ2d 1353 (E.D. Mo.1986); *Interconnect Planning Corp. v. Feil,* 543 F.Supp. 610, 215 USPQ 734 (S.D. N.Y.1982); *Marvacon Industries v. Thermacon Industries,* 209 USPQ 932 (D.N.J. 1980); *National Welding Equip. Co. v. Hammon Precision Equip. Co.,* 165 F.Supp. 788, 119 USPQ 13 (N.D.Cal.1958). None of these courts provided much analysis of the doctrine or the reasons supporting its application in the specific circumstances, preferring instead to view the general rationale of the *Scott Paper* and *Lear*

decisions as rejecting any further use of assignor estoppel. Two other courts have held that an assignee may be estopped from challenging the validity of the assigned patent. *Roberts v. Sears, Roebuck & Co.,* 573 F.2d 976, 197 USPQ 516 (7th Cir.1978); *Coast Metals, Inc. v. Cape,* 205 USPQ 154 (D.N.J.1979). However, the distinction between an assignor and an assignee of a patent gives those cases a distinctly different, but equally apparent, reason for application of estoppel. If an assignee of a patent were allowed to challenge the patent, it could be placed in the legally awkward position of simultaneously attacking and defending the validity of the same patent.

### III.

In examining *Lear,* one important distinction between assignors and licensees becomes apparent—a distinction that cautions against the automatic application to assignment cases of the rationale underlying *Lear* and licensees. The public policy favoring allowing a licensee to contest the validity of the patent is not present in the assignment situation. Unlike the licensee, who, without *Lear* might be forced to continue to pay for a potentially invalid patent, the assignor who would challenge the patent has already been fully paid for the patent rights.

█ Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity. The estoppel also operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor. *See, e.g., Stubnitz–Greene Spring Corp. v. Fort Pitt Bedding Co.,* 110 F.2d 192, 195–96 (6th Cir.1940). The estoppel historically has applied to invalidity challenges based on "novelty, utility, patentable invention, anticipatory matter, and the state of the art." *Babcock v. Clarkson,* 63 F. 607, 609 (1st Cir.1894).

The four most frequently mentioned justifications for applying assignor estoppel are the following: "(1) to prevent unfairness and injustice; (2) to prevent one [from] benefiting from his own wrong; (3) by analogy to estoppel by deed in real estate; and (4) by analogy to a landlord-tenant relationship." Cooper, *Estoppel to Challenge Patent Validity: The Case of Private Good Faith vs. Public Policy,* 18 Case W.Res. 1122 (1967). Although each rationale may have some utility depending on the facts presented by the particular case, our concern here is primarily with the first one.

Courts that have expressed the estoppel doctrine in terms of unfairness and injustice have reasoned that an assignor should not be permitted to sell something and later to assert that what was sold is worthless, all to the detriment of the assignee. Justice Frankfurter's dissent in *Scott Paper* explained that the doctrine was rooted in the notion of fair dealing. "The principle of fair dealing as between assignor and assignee of a patent whereby the assignor will not be allowed to say that what he has sold as a patent was not a patent has been part of the fabric of our law throughout the life of this nation." *Scott Paper v. Marcalus Mfg. Co.,* 326 U.S. 249, 260, 66 S.Ct. 101, 106, 90 L.Ed. 47 (Frankfurter, J., dissenting). "The essence of the principle of fair dealing which binds the assignor of a patent in a suit by the assignee, even though it turns out that the patent is invalid or lacks novelty, is that in this relation the assignor is not part of the general public but is apart from the general public." *Id.* at 261–62, 66 S.Ct. at 107. In other words, it is the implicit representation by the assignor that the patent rights that he is assigning (presumably for value) are not worthless that sets the assignor apart from the rest of the world and can deprive him of the ability to challenge later the validity of the patent. To allow the assignor to make that representation at the time of the assignment (to his advantage) and later to repudiate it (again to his advantage) could work an injustice against the assignee.

### IV.

█ Our holding is that this is a case in which public policy calls for the application

of assignor estoppel.[1] We are, of course, not unmindful of the general public policy disfavoring the repression of competition by the enforcement of worthless patents. Yet despite the public policy encouraging people to challenge potentially invalid patents, there are still circumstances in which the equities of the contractual relationships between the parties should deprive one party (as well as others in privity with it) of the right to bring that challenge.

■ Appellants argue that assignor estoppel is necessarily a variation of estoppel by conduct and should be governed by the traditional elements of equitable estoppel.[2] But the Supreme Court has never analyzed assignor estoppel by reference to the elements of equitable estoppel and has explicitly recognized assignor estoppel to be the functional equivalent of estoppel by deed. *Westinghouse*, 266 U.S. at 348–49, 45 S.Ct. at 119. Estoppel by deed is a form of *legal*, not equitable, estoppel. *AMP, Inc. v. United States*, 389 F.2d 448, 452, 156 USPQ 647, 649, 182 Ct.Cl. 86, *cert. denied*, 391 U.S. 964, 88 S.Ct. 2033, 20 L.Ed.2d 878 (1968). The *Westinghouse* Court did not specify whether assignor estoppel operates in precisely the same manner as estoppel by deed, which ordinarily prevents one from attacking any material fact found in the document (or deed) transferring the rights—whether assignor estoppel would prevent an assignor from attacking a material fact found in the assignment, thereby preventing the assignor's assertion of invalidity. But the extent to which the concept of an estoppel by deed may or may not shape the doctrine of assignor estoppel, though it may often play a significant role, need not confine our application of the doctrine. As noted above, we believe that the primary consideration in now applying the doctrine is the measure of unfairness and injustice that would be suffered by the assignee if the assignor were allowed to raise defenses of patent invalidity. Our analysis must be concerned mainly with the balance of equities between the parties.

We note first that Dr. Welter assigned the rights to his inventions to Diamond in exchange for valuable consideration (one dollar plus other unspecified consideration —presumably his salary over many years and other employment benefits). Dr. Welter also executed an inventor's oath, which stated his belief, *inter alia*, that he was the first and sole inventor, that the invention was never known or used before his invention and that it was not previously patented or described in any publication in any country. Furthermore, Dr. Welter apparently participated actively in the patent application process, including drafting the initial version of the claims and consulting on their revision.

Appellants would now defend against accusations of infringement by trying to show that the three patents in issue are invalid because the inventions either were inadequately disclosed by the specifications, lacked novelty, or would have been obvious to one of ordinary skill at the time the inventions were made. If appellants are permitted to raise these defenses and are successful in their proof, Dr. Welter will have profited both by his initial assignment of the patent applications and by his later attack on the value of the very subjects of his earlier assignment. In comparison, Diamond will have given value for the rights to Dr. Welter's inventions only to have him later deprive Diamond of the worth of those assigned rights.

■ We agree with the district court that the equities weigh heavily in favor of Diamond. Although the doctrine of assignor estoppel may no longer be a broad eq-

---

1. This being an issue directly related to the patent law, we need not follow the law of the Eighth Circuit in which the current case arose.

2. *Brand Plastics Co. v. Dow Chemical Co.*, 267 F.Supp. 1010, 1013 (C.D.Cal.1967), sets out the elements of equitable estoppel as follows:
   (1) Ignorance of the party claiming estoppel of the matter asserted; (2) silence concerning matter where there is a duty to speak amounting to misrepresentation or concealment of a material fact; (3) action by the party relying on the misrepresentation or concealment; and (4) damages resulting if the estoppel is denied.
   (quoting *Nelson v. Chicago Mill & Lumber Corp.*, 76 F.2d 17, 21 (8th Cir.1935)).

uitable device susceptible of automatic application, the case before us is appropriate for its use. When the inventor-assignor has signed the Oath, Power of Attorney and Petition, which attests to his belief in the validity of the patents, and has assigned the patent rights to another for valuable consideration, he should be estopped from defending patent infringement claims by proving that what he assigned was worthless. That is an implicit component of the assignment by Welter to Diamond which is immune from contradiction. The inventor's active participation in the prosecution and preparation of the patent applications, as is alleged here, would tilt the equities even more heavily in favor of the assignee, but consideration of this factor is not necessary to the result.[3]

■ It is also irrelevant that, at the time of the assignment, Dr. Welter's patent applications were still pending and the Patent Office had not yet granted the patents. What Dr. Welter assigned were the rights to his inventions. That Diamond may have later amended the claims in the application process (a very common occurrence in patent prosecutions), with or without Dr. Welter's assistance, does not give appellants' arguments against estoppel any greater force. Our concern must be the balance of the equities. The fact is that Dr. Welter assigned the *rights* to his invention, irrespective of the particular *language* in the claims describing the inventions when the patents were ultimately granted. Appellants should not be allowed now to destroy those rights by derogating the patents' validity. Cf. *AMP, Inc.*, 389 F.2d at 452, 156 USPQ at 649–50 (legal estoppel, in context of implied license doctrine, prevents licensor (or assignor) who has licensed (or assigned) a definable property right for valuable consideration from attempting to derogate or detract from that right). In *Westinghouse*, the Court observed that the scope of the right conveyed in the assignment of patent rights before the granting of the patent "is much less certainly defined than that of a granted patent, and the

question of the extent of the estoppel against the assignor of such an inchoate right is more difficult to determine than in the case of the patent assigned after its granting." *Westinghouse*, 266 U.S. at 352–53, 45 S.Ct. at 121. However, the Court merely suggested that "[t]his difference might justify the view that the range of relevant and competent evidence in fixing the limits of the subsequent estoppel should be more liberal than in the case of an assignment of a granted patent[,]" and found it unnecessary to decide the question. *Id.* at 353, 45 S.Ct. at 121.

■ Nevertheless, *Westinghouse* does allow for an accommodation in such circumstances. To the extent that Diamond may have broadened the claims in the patent applications (after the assignments) beyond what could be validly claimed in light of the prior art, *Westinghouse* may allow appellants to introduce evidence of prior art to narrow the scope of the claims of the patents, which may bring their accused devices outside the scope of the claims of the patents in suit. *Id.* at 350, 45 S.Ct. at 120. This exception to assignor estoppel also shows that estopping appellants from raising invalidity defenses does not necessarily prevent them from successfully defending against Diamond's infringement claims.

### V.

■ Appellants also contend that the district court improperly relied on material outside the pleadings in granting Diamond's motion to strike. Although nothing in the language of Fed.R.Civ.P. 12(f) explicitly prohibits a court from examining materials beyond the pleadings, some courts have noted that the general rule is otherwise. *See, e.g., OKC Corp. v. Williams*, 461 F.Supp. 540, 550 (N.D.Tex.1978); *Ciprari v. Servicos Aereos Cruzeiro do sul*, 245 F.Supp. 819, 820 (S.D.N.Y.1965), *aff'd*, 359 F.2d 855 (2d Cir.1966). Ordinarily, a court should be able to determine the legal sufficiency of a defense from the plead-

---

**3.** The court has not considered the other material in appellant's reply brief which appellee says was not before the trial court.

ings. However, when a plaintiff raises an equitable challenge to a defense, such as assignor estoppel, a court ought to have a bit more latitude to consider materials beyond the pleadings, particularly if they present uncontested factual matters.

■ In granting the motion to strike, the district court mentioned the assignment, the inventor's oath, and Dr. Welter's participation in the patent application process as factors weighing in favor of estoppel. 666 F.Supp. at 167. The fact of the assignment and of the oath were contained in the pleadings. These were enough, in our view, to support application of the estoppel. It appears that materials indicating the extent of Dr. Welter's participation in the patent application process were outside the pleadings. However, because of the equitable nature of the estoppel doctrine, we believe it was proper, although unnecessary, for the court to consider these materials.

## CONCLUSION

Because we agree that the public policy behind the doctrine of assignor estoppel prevents these appellants from challenging the validity of the patents in issue, the district court's decision granting Diamond's motion to strike appellants' second, third and sixth affirmative defenses is affirmed.

AFFIRMED.

PAULINE NEWMAN, Circuit Judge, concurring.

I agree with the court's decision that the equities in this case favor imposing estoppel on the assignor, and with the court's recognition that elements analogous to estoppel by deed may also be considered. However, I believe that the relationship between assignee and assignor is preferably treated under the laws of contract and transfers of property,[1] rather than on a case by case equitable evaluation.

Assignor–assignee cases are typified by the facts at bar: the validity of the patent is attacked by the inventor/assignor who, having received the bargained-for consider-

ation for the assignment, now seeks to impeach the invention (by challenging the validity of the patent) in order to use the subject matter for his own gain. Our decision today does indeed help to clarify the issues, but I write separately to state my belief that it is time to reaffirm the principle of assignor estoppel; that is, to reinstate assignor estoppel as the general rule rather than the exception. Such rule would place on the assignor/challenger the burden of proving that an apparently valid deed of assignment should not be enforced in accordance with the applicable laws of contracts and property transfers, rather than placing on the assignee the burden of proving that equity is on its side. See the discussion, in the majority opinion, of *Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co.*, 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316 (1924) and other cases showing various policy and legal aspects that have been considered by courts.

The situation of the appellant Dr. Welter typifies modern industrial research environments, where inventor/assignors are supported by the assignee in salary, laboratory, staff, and equipment. Equally typical is the circumstance that subsequent investment by the assignee, in the development and commercialization of the invention, can dwarf the cost of making the invention itself. Much attention has been given to encouraging investment in research and commercialization of new products, and in providing incentives to offset the risk inherent in such activity. *See, e.g., Report of the Advisory Committee on Industrial Innovation,* U.S. Department of Commerce (1979). Giving realistic weight to our national interest in strengthening incentives for innovation, I believe that both public policy and experience weigh on the side of reaffirming the contractual integrity of patent assignments.

Students of the public policy invoked by the Supreme Court when it eliminated licensee estoppel in *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610

---

1. See 35 U.S.C. 261: Subject to the provisions of this title, a patent shall have the attributes of personal property.

(1969), have acquired a cynical view of the fruits of that policy. *See, e.g.,* Dreyfuss, *Dethroning Lear: Licensee Estoppel and the Incentive to Innovate,* 72 Va.L.Rev. 677 (1986). The policy stated in *Lear*—the policy that overrode and negated the contractual integrity of the license agreement—is to achieve "full and free competition in the use of ideas which are in reality a part of the public domain". 395 U.S. at 670. But even Lear, the licensee, did not argue for any anticipated public advantage such as lower prices to the public. The only public benefit asserted, and obtained, was the invalidation of Adkins' apparently improvidently granted patent. The private benefit, of course, was the elimination of Lear's royalty obligation while it continued the manufacture of the gyroscope it had licensed from Adkins. *See generally* Milgrim, *Sears to Lear to Painton: Of Whales and Other Matters,* 46 N.Y.U.L. Rev. 17 (1971).

The Court in *Lear* apparently believed that "full and free competition" ensues when a patent is eliminated from the rolls. The experience of the marketplace is otherwise. The usual incentive to the patent licensee in taking the license is, and always has been, the opportunity for profit. If the destruction of a licensed patent would not enhance profits but instead facilitate the entry of competitors, this would surely be weighed by a licensee before embarking on a *Lear*-authorized challenge to the licensed patent. *See* Dreyfuss at 698–700 (discussing the value of lead time to a licensee). It is common experience—and common sense—that challenges to patent validity by either licensees or assignors, albeit serving the private interest of the challenger, carry scant public benefit. The nobler expectations of *Lear* have few testimonials.

The past rejection of assignor estoppel appears to be based on respect for *Lear* and a reluctance to depart from the basic policy as to licensee estoppel expressed therein. Yet, as the majority observed, the policy considerations are not identical. In my view they are sufficiently different that rehabilitation of the doctrine of assignor estoppel is merited. Placing legal emphasis on the property and transfer aspects of

patent assignments does not exclude equitable considerations, and the usual defenses to the contract of assignment, e.g. fraud or failure of consideration, may always be raised by an assignor. However, I know of no other property right that is treated by law as exempt from the normal precepts of commercial bargain and sale. We should repair this gap between outmoded theory and market reality.

Patent rights are indeed vested with strong elements of public interest, but this does not exclude giving due weight to all the interests involved. Thus although I join the court's judgment, I would decline to give sustenance to a theory of public policy that both weakens the rule of law and disserves the national interest.