**Q.G. PRODUCTS, INC. and G.L. Group, Ltd., Plaintiffs–Appellees,**

v.

**SHORTY, INC., Defendant–Appellant.**

No. 92–1247.

United States Court of Appeals, Federal Circuit.

May 7, 1993.

Allen D. Brufsky, Kramer, Brufsky & Cifelli, P.C., Southport, CT, argued for plaintiffs-appellees.

Michael A. Cantor, Fishman, Dionne & Cantor, Windsor, CT, argued for defendant-appellant.

Before MICHEL, Circuit Judge, COWEN, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

The United States District Court for the District of Connecticut granted the summary judgment motion of Q.G. Products, Inc. (QG). The district court found that Shorty, Inc. infringed QG's United States Patent No. 4,989,438 ('438). The district court also determined that the doctrine of assignor estoppel barred Shorty's invalidity defense. Be-

cause no genuine disputes of material fact prevent application of the doctrine of assignor estoppel, this court affirms.

## BACKGROUND

In 1987, Guy Lallier, Marc Lallier, and Rudolphe Simon discussed a design for a device for fastening metal corner strips to wall boards. In February 1988, Simon filed patent application No. 07/157,377 ('377) for such a device. The '377 application disclosed a device that holds a metal corner strip in place while mechanically fastening it to the ends of two wall boards. A "shoe" on the device holds the protective strip in alignment during fastening.

The '377 application depicted a corner strip and a shoe. The application made no mention of interchangeable shoe sizes. Claim 1 of the application also described "power operated means" for the device. Narrower claims specifically mentioned a motor and a solenoid.

Also in February 1988, the Lalliers and Simon agreed to form Shorty, Inc. Simon assigned his rights to the '377 application to Shorty for a $20,000 loan and stock in the company. The Lalliers contributed money to the corporation. The parties executed a written contract reflecting this agreement on April 2, 1988.

On April 24, 1988, a Patent & Trademark Office examiner rejected all of the '377 claims. Due to a falling-out between Simon and the Lalliers, Shorty reassigned the '377 application to Simon in July 1988 in exchange for $3,000, a promise for $17,000 more, and return of the Shorty stock. This assignment is QG's basis for assignor estoppel. Simon filed one amendment and then abandoned the application in December 1989.

In October 1989, however, Simon had already filed a continuation-in-part application, No. 07/423,950 ('950), of the '377 application. The '950 application claimed the same device, but added an interchangeable head feature, pneumatic power means, and a pistol grip. The interchangeable head allows the operator to switch shoe sizes for different corner angles (e.g., 90 degrees, 135 degrees, etc.). The '950 application matured into the '438 patent.

Simon assigned his interest in the invention and the '950 application to Nastasi-White, Inc., who in turn assigned the application to the plaintiff, G.L. Group (GL). GL (and its exclusive licensee QG) then filed an infringement action against Shorty. Shorty asserted that the '438 patent was invalid under 35 U.S.C. § 102(f) (1988). Shorty claimed that Guy Lallier worked with Simon on the invention and thus should have been listed as a co-inventor. QG moved for summary judgment asserting that assignor estoppel barred Shorty's invalidity defense. The magistrate judge recommended that the district court grant QG's summary judgment motion. The district court followed that recommendation.

## DISCUSSION

█ This court has had few occasions to apply the doctrine of assignor estoppel. In first recognizing the doctrine in *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 6 USPQ2d 2028 (Fed.Cir.1988), *cert. dismissed*, 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 978 (1988), this court held that assignment of a patent or an invention and a patent application for value estops the assignor from later contending that the assigned property was valueless. To prevent unfairness, this court refused to allow the assignor of a patent to benefit from an assignment, only to benefit again from asserting the patent's invalidity. *Id.* at 1224–25. Thus, this court precluded an assignor, accused of infringement, from defending on grounds of invalidity. *Id.* at 1224–25. A balancing of the equities, inter alia, between the parties in *Diamond* dictated that result. *Id.* at 1225.

Where a party assigns a patent, and the equities demand application of estoppel, the analysis is straightforward. The assignor implicitly attests to the value of the assigned patent. The assignor's representations cover no more nor less than the assigned rights. Thus, a defendant may submit evidence to help properly construe or narrow the claims of the assigned patent, while estopped to challenge their validity. *Westinghouse Elec. & Mfg. v. Formica Insulation Co.*, 266 U.S.

342, 351, 45 S.Ct. 117, 120, 69 L.Ed. 316 (1924); *Diamond,* 848 F.2d at 1222.

Where, however, a party assigns an "invention" or application, and the equities advise application of estoppel, the analysis is more elaborate. Unlike assignment of a patent, a party's representations upon assignment of an application are not as clearly bounded. In *Westinghouse Electric,* the Supreme Court addressed the issue:

> It is apparent that the scope of the right conveyed in such an assignment is much less certainly defined than that of a granted patent, and the question of the extent of the estoppel against the assignor of such an inchoate right is more difficult to determine than in the case of a patent assigned after its granting. When the assignment is made before patent, the claims are subject to change by curtailment or enlargement by the Patent Office with the acquiescence or at the instance of the assignee, and the extent of the claims to be allowed may ultimately include more than the assignor intended to claim. This difference might justify the view that the range of relevant and competent evidence in fixing the limits of the subsequent estoppel should be more liberal than in the case of an assignment of a granted patent.

*Westinghouse Electric,* 266 U.S. at 352–53, 45 S.Ct. at 121.

In stating that the allowable range of evidence "should be more liberal," the Court did not advocate a liberal definition of the invention in favor of the assignee. Rather the Court advocated admission of more evidence to determine carefully the limits of the estoppel. In other words, because the bounds of the invention are less certain, the Court recommended consideration of ample evidence to define the assignor's representations.

■ In this case, this court first decides whether the district court was correct to apply the doctrine of assignor estoppel. This determination requires a balancing of the equities of the case. At the time of the assignment in July 1988, Shorty implicitly represented to Simon that the invention in the '377 application had some value. For the assignment, Shorty received $3,000, stock, and a promise for $17,000 more.

Although the examiner initially rejected all the claims of the '377 application in April 1988, this rejection did not render the application valueless. Such rejections often occur as part of the normal application process. Although Shorty's assignment merely returned the parties to their pre-incorporation financial posture, Shorty nevertheless received value for the assignment. Thus Shorty represented that the assigned property had value.

Shorty's invalidity contentions in the district court also tend to tip the equities in favor of applying assignor estoppel. One of Shorty's primary grounds for asserting invalidity of the '438 patent in the court below was 35 U.S.C. § 102(f). Shorty answered the complaint by alleging that, *inter alia,* Simon should have listed Guy Lallier as a joint inventor in the '377 application. Shorty contended that Guy Lallier had invented the corner fastening device before November 1987. At the time Shorty reassigned the application to Simon in July 1988, the Lalliers (Shorty) knew that the February 1988 patent application did not list Guy Lallier as an inventor. Nonetheless, Shorty assigned its rights under the application to Simon for value. Thus, they acknowledged the value of the application with full knowledge of the potential issue under section 102(f). For this reason as well, this court upholds the district court's weighing of the equities and decision to apply the doctrine of assignor estoppel to Shorty.

Next this court determines whether the district court correctly ascertained the limits of the assignment. If the '438 patent claims an invention within the assignment agreement, the assignor estoppel doctrine operates to prevent Shorty from contesting the validity of the patent. The assignment agreement provided that "Simon is the inventor of a drywall corner bead clincher, also known as a Power Actuated Device for Installing Metal Corner Strip, upon which application no. 157,377 is pending before the U.S. Patent Office." Under the agreement, Shorty "waive[d] any claim to said invention or contracts relating thereto, and reassign[ed] its rights thereto to Simon, and agree[d] that neither it nor any of its remaining principals

shall have any interest henceforth in said invention."

Shorty asserts that it did not assign the invention in question. That is, Shorty assigned the '377 application, not the '950 application which later matured into the '438 patent. Because the '950 application was a continuation-in-part of the '377 application, Shorty contends that the differences between the two applications preclude assignor estoppel. Shorty contends that the '377 application did not even mention interchangeable heads, a feature of the '438 patent.

In *Diamond Scientific,* this court applied the estoppel doctrine in the face of credible invalidity evidence: "The fact is that [the assignor] assigned the *rights* to his invention, irrespective of the particular *language* in the claims describing the inventions when the patents were ultimately granted." 848 F.2d at 1226. Thus this court's analysis is not limited to the claims of the '377 application. This court also noted that the assignor could present evidence of prior art to narrow the scope of the claims, possibly avoiding infringement. *Id.*

The '438 patent claims a device comprising "a plurality of interchangeable shoes" and "means for releasably mounting each of said shoes on the device." The '377 application did not claim or disclose a releasable mount for interchangeable shoes. Yet, during prosecution of the '950 application, the examiner determined that "the skilled artisan within this art is quite cognizant of the concept of constructing tools with replaceable parts on the hand tools ... [t]his is a commonly known practice." The examiner found that this aspect of the invention in the '950 application was obvious in light of the prior art. Thus, shoe interchangeability was not a material difference between what Shorty assigned and the '438 patent.

Moreover Simon testified that he demonstrated a prototype with interchangeable shoes to the Lalliers before the assignment. Simon testified that he first developed the ability to interchange shoes in early 1985, more than two years before Shorty reassigned the invention to Simon. Because Simon assigned all his rights to Shorty—in-cluding shoe interchangeability—Shorty necessarily assigned those rights back to Simon.

The '438 patent also discloses use of pneumatic power means for actuating the device. While not specifically disclosing pneumatic powering, the '377 application claimed power operated means in claim 1. More important, dependent claim 2 in the '377 application recited the use of a general motor in sweeping terms:

2. A device as set forth in claim 1 wherein said power operated means comprises a motor having a fixed part mounted in fixed position relative to said retaining means and a reciprocally movable part connected to said operating means.

The language of this claim could cover a motor using electric power, such as the solenoid disclosed in the application, or pneumatic power, or even hydraulic power. The language in both claims 1 and 2 show that the interchangeable shoe and pneumatic power features were part of the '377 application which Shorty assigned for value.

Moreover, Shorty overstates the importance of these two features in the prosecution leading to the '438 patent. The prosecution history reveals that the examiner allowed the application because Simon later claimed a transversely mounted pistol grip, not because of more specific language about interchangeable shoes or power operating means. The examiner's interview summary record, indicating that an agreement had been reached, stated that the agreed-to claims would "clearly defin[e] the mounting (i.e., operable connection) attaching means to the shoe and ... relat[e] the pistol grip and shaft relative to one another and the housing rather than relative to the horizon. As agreed, the claims define over the art ... because the attaching means are not mounted on and operably connected to the shoe." Before this agreement, Simon made several unsuccessful amendments concerning the interchangeable shoe feature and the power operated means. Thus, the prosecution history shows that the examiner allowed the claims after insertion of language on the transversely mounted pistol grip.

The pistol grip depicted in the '950 application, however, is virtually identical to that

shown in the '377 application. Simon carried this inventive aspect from the '377 application over to the '950 application. In all, the prosecution history shows that the '438 patent merely elaborates on the invention Shorty reassigned to Simon.

Shorty mistakenly compares only the matter disclosed in the '377 application to the '438 patent. As this court stated in *Diamond,* Shorty assigned "the *rights* to [the] invention." 848 F.2d at 1226. Shorty's assignment of the invention and the '377 application embraces the '438 patent now asserted against Shorty.

## CONCLUSION

The equities in this case weigh in favor of applying the assignor estoppel doctrine to Shorty. Furthermore, the scope of Shorty's assignment to Simon was at least as broad as the invention claimed in the '438 patent. Therefore, the district court properly estopped Shorty from contesting the validity of the '438 patent. In light of Shorty's virtual admission of infringement, this court affirms the district court's summary judgment.

## COSTS

Each party shall bear its own costs for this appeal.

AFFIRMED.