**SAINT–GOBAIN PERFORMANCE PLASTICS CORPORATION, HCM DIVISION, Plaintiff,**

v.

**TRUSEAL USA, INC. and Stephen Ronald Warburton–Pitt, Defendant.**

Civil Action No. 04–5546 (JAP).

United States District Court, D. New Jersey.

Jan. 6, 2005.

Anat Hakim, Foley & Lardner, Washington, DC, Gary S. Jacobson, Herold and Haines, P.A., Warren, NJ, Attorneys for Plaintiff.

Seth D. Levine, Newton, NJ, Attorney for Defendants.

## OPINION

PISANO, District Judge.

Saint–Gobain Performance Plastics Corporation, HCM Division ("Saint–Gobain" or "Plaintiff") filed a Complaint with this Court[1] on August 6, 2004, alleging that Truseal USA, Inc. ("Truseal") and its owner and president Stephen Ronald Warburton–Pitt ("Warburton–Pitt") (collectively "Defendants") infringed a patent owned by Saint–Gobain. Defendants separately filed answers but both raised defenses and counterclaims challenging the validity of the patent. Plaintiff, invoking the doctrine of assignor estoppel, now moves pursuant to Federal Rules of Civil Procedure 12(f) and 12(b)(6) to strike and to dismiss Defendants' affirmative defenses and counterclaims that challenge validity. This Court has jurisdiction under 28 U.S.C. 1331 and 1338.[2] For the reasons expressed below, the Court grants Plaintiff's motions.

---

1. Saint–Gobain initially filed its Complaint in the U.S. District Court for the Western District of Wisconsin, but after Defendants filed an action in bankruptcy in this District, Saint–Gobain voluntarily withdrew and refiled its Complaint here, subject to an automatic stay. The parties consented to lift the stay and to withdraw reference so that this Court could consider the motions now under review.

2. Any appeal, taken in whole or in part, from a final decision of a case brought pursuant to 28 U.S.C. 1338 is exclusively heard by the U.S. Court of Appeals for the Federal Circuit. 28 U.S.C. 1295(a)(1). Consequently, this Court is bound by the law of the Federal Circuit as it relates to patent issues.

## I. Factual History

Saint–Gobain, generally, is in the business of selling products such as tubing, fittings, and manifolds. Warburton–Pitt is a former employee of Sani–Tech and Nalge Nunc International Corporation ("NNIC"), both predecessors-in-interest of Saint–Gobain. As an employee of Sani–Tech, Warburton–Pitt entered into a Patent and Trade Secret Agreement in which he agreed to "fully disclose to [Sani–Tech] any and all inventions conceived or made by [him] or jointly with others along the lines of [Sani–Tech]'s work, investigations or interests while in its employ." Warburton–Pitt further agreed to "assign to [Sani–Tech], its successors and assigns, all such inventions and any and all patents thereon." The agreement was made "in consideration of [his] employment and continued employment by Sani–Tech and the salary to be paid to [him]...."

Not long thereafter Warburton–Pitt and Rick Alan Steele ("Steele") jointly invented "a new and improved Tubing and Connector Assembly and Method of Molding" and together they executed an Assignment of Invention and Patents Thereon ("Assignment") to NNIC on August 4, 1997. The Assignment states in part:

NOW, THEREFORE, to all whom it may concern, be it known that, for and in consideration of the sum of One Dollar to us in hand paid, and other good and valuable consideration, the receipt of which is hereby acknowledged, we have sold, assigned and transferred, and by these presents do sell, assign and transfer unto the said [NNIC] our entire right, title and interest in and to the subject-matter disclosed in said application and in and to all Letters Patent Domestic and Foreign issued or to be obtained thereon, including all rights and interests with priority rights under the Paris Convention for the Protection of Industrial Property, the International Patent Cooperative Union, European Patent Convention, Common Market Convention, or any other Convention or Union for each country of said Convention or Union; and we hereby authorize and request the Commissioner of Patents to issue the Letters Patent granted on said application and all future patents granted upon the subject-matter disclosed therein to the above named Assignee, its legal representatives and assigns.

On the same day, Warburton–Pitt and Steele executed a Declaration, Power of Attorney, and Petition in which they declared under oath that they were the "original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled: Tubing and Connector Assembly and Method of Molding." One week later NNIC filed a U.S. Patent Application based on the representations, submissions and assignment of Warburton–Pitt and Steele. The application was approved as of September 18, 2001, and Patent Number U.S. 6,290,265 ("the '265 patent") was issued to Saint–Gobain as Assignee. The '265 patent listed Warburton–Pitt and Steele as the inventors.

Warburton–Pitt resigned from Saint–Gobain in October 1999 and founded Truseal, of which he is the sole owner and president. Truseal is in the business of manufacturing and selling products such as tubing, fittings, and manifolds. In its Complaint Saint–Gobain alleged that Defendants infringed the '265 patent. Defendants separately answered the Complaint but each claimed the patent was invalid as their first affirmative defenses. Additionally, Defendants separately made counterclaims seeking, among other things, declaratory judgment that the '265 patent was invalid and unenforceable. Saint–Go-

bain now moves to strike and to dismiss Defendants' affirmative defenses and counterclaims that allege the '265 patent is invalid. In their papers and at the motion hearing, Defendants admitted that Saint–Gobain is rightful assignee of the '265 patent and that Warburton–Pitt did duly assign the '265 patent to Saint–Gobain through its predecessors-in-interest.

## II. Discussion

In regards to Defendants' affirmative defense invoking invalidity, Plaintiff cites Federal Rule of Civil Procedure 12(f), which permits a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Correspondingly, Plaintiff cites Rule 12(b)(6) in response to Defendants' counterclaims that seek to declare the '265 patent invalid. Rule 12(b)(6) permits a court to dismiss a complaint "for failure to state a claim upon which relief can be granted." On a Rule 12(b)(6) motion, a court will, as it must, accept as true all of the factual allegations within the complaint and any reasonable inferences that may be drawn from those allegations. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). "In considering a Rule 12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000) (quoting *Nami*, 82 F.3d at 65). Claims will be dismissed under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Nami*, 82 F.3d at 65.

In support of its motions Plaintiff invokes the doctrine of assignor estoppel, which "is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity. The estoppel also operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor." *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed.Cir. 1988); *Mentor Graphics Corp. v. Quickturn Design Systems, Inc.*, 150 F.3d 1374, 1377 (Fed.Cir.1998). Defendants argue that assignor estoppel "has been steadily eroding" and is no longer a viable doctrine. Defendants rely on *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) (disapproving the doctrine of licensee estoppel); *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47 (1945) (allowing the assignor to demonstrate the accused devices are within the prior art so as avoid infringement); and *Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co.*, 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316 (1924) (permitting assignor to explain the prior art so as to narrow the patent claims in light of the assignment). Though these cases limit the doctrine, they do not obviate it. More contemporary cases demonstrate that assignor estoppel remains a sound doctrine, but not without limitations.

In *Diamond Scientific*, the plaintiff brought suit against a former employee, Dr. Welter, and his corporation alleging patent infringement. While an employee Dr. Welter invented a vaccine for gastroenteritis in swine and filed a patent application, the rights of which he assigned to plaintiff. Plaintiff eventually was awarded three patents as result of the application. Dr. Welter subsequently left plaintiff's employ and formed his own company, which began manufacturing and selling a gastroenteritis vaccine for swine. In response to plaintiff's patent infringement action, Dr. Welter raised patent invalidity

defenses and Plaintiff moved to strike those defenses based on assignor estoppel. The district court granted plaintiff's motion and the Federal Circuit addressed "whether in this case the assignor-inventor of the patents (or a company in privity with him) can defend the infringement suit brought by the assignee by challenging the validity of the patents previously assigned, or whether the equitable doctrine of assignor estoppel prevents the assignor from claiming that the patents are invalid." 848 F.2d at 1222.

The court began its analysis by noting that assignor estoppel is the "functional equivalent of estoppel by deed," which is "a form of *legal*, not equitable, estoppel." *Id.* at 1225. However, the court explained it was not constrained by that concept and later reiterated that assignor estoppel was an equitable challenge, *id.* at 1227, but not so broad as to be applied automatically.[3] *Id.* at 1225–26. The court explained that "the primary consideration in now applying the doctrine is the measure of unfairness and injustice that would be suffered by the assignee if the assignor were allowed to raise defenses of patent invalidity. Our analysis must be concerned mainly with the balance of equities between the parties." *Id.* at 1225. In weighing the equities the court found it significant that Dr. Welter 1) assigned the rights to his inventions "for valuable consideration (one dollar plus other unspecified consideration—presumably his salary over many years and other employment benefits)," 2) "executed an inventor's oath, which stated his belief, *inter alia*, that he was the first and sole inventor ...," and 3) actively participated in the patent application process. *Id.* at 1225. The former two factors

were enough to support application of the doctrine and the materials establishing the final factor, though unnecessary and outside the pleadings, were properly considered "because of the equitable nature of the estoppel doctrine." *Id.* at 1227. The court explained that "[w]hen the inventor-assignor has signed the Oath, Power of Attorney and Petition, which attests to his belief in the validity of the patents, and has assigned the patent rights to another for valuable consideration, he should be estopped from defending patent infringement claims by proving that what he assigned was worthless." *Id.* at 1226.

The court noted that it was irrelevant that Dr. Welter's patent application was pending at the time of the assignment. *Id.* "The fact is that Dr. Welter assigned the *rights* to his invention, irrespective of the particular *language* in the claims describing the inventions when the patents were ultimately granted." *Id.* However, the court did note one possible exception to assignor estoppel: If the assignee "broadened the claims in the patent applications (after the assignments)" then the assignor might be permitted "to introduce evidence ... to narrow the scope of the claims of the patents...." *Id.* (citing *Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co.*, 266 U.S. 342, 350, 45 S.Ct. 117, 69 L.Ed. 316 (1924)).

 In the case at hand, Warburton–Pitt, like Dr. Welter in *Diamond Scientific*, represented that his invention had value. Warburton–Pitt executed an inventor's oath in which he expressed his belief that he was the first inventor of a new and novel invention. He reiterated that belief

---

3. Compare *Univ. of West Virginia v. Vanvoorhies*, 278 F.3d 1288, 1301 (Fed.Cir.2002) (noting that assignor estoppel is an "equitable doctrine") with *Hexcel Corp. v. Advanced Textiles, Inc.*, 716 F.Supp. 974, 976 (W.D.Tex. 1989) and *American Fence Co. v. MRM Security Systems, Inc.*, 710 F.Supp. 37, 41 (D.Conn. 1989) (noting that assignor estoppel is a form of legal estoppel).

in the Assignment to Saint–Gobain and acknowledged receipt of valuable consideration for his rights to the invention. According to *Diamond Scientific*, 848 F.2d at 1226, these factors alone sufficiently support application of assignor estoppel; any evidence that Warburton–Pitt actively participated in the prosecution of the patent application would only embolden the applicability of the doctrine.[4] A balancing of the equities thus warrants the application of assignor estoppel against both Warburton–Pitt and his company Truseal.[5]

Although assignor estoppel now precludes Defendants from challenging the validity of the '265 patent they are not without a defense. "An estopped party may also argue for a narrow claim construction or that the accused devices are within the prior art and therefore cannot infringe." *Mentor Graphics Corp.*, 150 F.3d at 1379 (citing *Westinghouse*, 266 U.S. at 351, 45 S.Ct. 117; *Scott Paper Co.*, 326 U.S. at 257–58, 66 S.Ct. 101); *see Diamond Scientific*, 848 F.2d at 1226; *see also Q.G. Products, Inc.*, 992 F.2d at 1214 (describing how to analyze whether a patent falls within the bounds of an assignment).

### III. Conclusion

For the reasons expressed above, Plaintiff's motion to strike Defendants' affirmative defenses and to dismiss Defendants' counterclaims that challenge the validity of the '265 patent is granted. An appropriate order follows.

---

4. Plaintiff points to sixteen letters between Warburton–Pitt and the attorneys prosecuting the '265 patent as evidence that he was intimately involved in the prosecution. Warburton–Pitt denies any active participation. This dispute is immaterial, however, because the equities support application of assignor estoppel without consideration of Warburton–Pitt's involvement in the prosecution.

### ORDER

Before the Court is Plaintiff's motion to strike and to dismiss Defendants' defenses and counterclaims that challenge the validity of a patent in this infringement action. Having considered the parties' written submissions and oral arguments in this matter, and for the reasons expressed in the accompanying opinion of January 6, 2005, and for good cause shown, IT IS

ON this 6th day of January 2005,

ORDERED that Plaintiff's motion to strike and to dismiss Defendants' defenses and counterclaims that are based on patent invalidity is GRANTED.

5. Warburton–Pitt has not disputed that he is in privity with Truseal, the company he founded. *See Diamond Scientific*, 848 F.2d at 1224 ("The estoppel also operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor").