NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1056, -1070

DANE INDUSTRIES, INC.,

Plaintiff-Appellant,

v.

AMERITEK INDUSTRIES, LLC,

Defendant-Cross Appellant.

_____

DECIDED:  October 26, 2005

_____

Before RADER, Circuit Judge, ARCHER, Senior Circuit Judge, and SCHALL, Circuit Judge.

ARCHER, Senior Circuit Judge.

Dane Industries Inc., ("Dane") appeals the judgment of the United States District Court for the District of Minnesota granting Ameritek Industries, LLC's ("Ameritek") motion for summary judgment of noninfringement of U.S. Pat. Nos. 6,220,379 ("the '379 patent") and 5,934,694 ("the '694 patent").  Ameritek cross appeals the district court's grant of Dane's motion for partial summary judgment that the '379 and '694 patents are not invalid.  The district court erred in its claim construction of the term "a brake controller" in the '379 patent, and therefore we reverse on this issue.  Because Ameritek's Golden Retriever device does not contain the "locking means" element required by the claims of the '694 patent, we affirm the grant of summary judgment of noninfringement as to this patent.  Finally, we conclude that the district court correctly

ruled that assignor estoppel prohibits Ameritek from now challenging the validity of the patents at issue. Accordingly, we affirm-in-part and reverse-in-part and remand for further proceedings.

I

The '379 and '694 patents, owned by Dane, are directed to a vehicle that retrieves shopping carts. Dane asserts that Ameritek's Golden Retriever infringes both patents. Claim 1, representative of the '694 patent, recites as follows:

> 1. A vehicle for moving at least one wheeled cart, the vehicle comprising:
> a chassis supported by at least two wheels;
> electric drive means supported by the chassis, the drive means coupled to the at least two wheels;
> means for generating a drive signal, the drive signal comprising at least one target speed;
> a controller coupled to the electric drive means, the controller operative to energize the electric drive means to move the vehicle in response to the drive signal;
> a front plate mounted on the chassis;
> two jaws protruding from the front plate, wherein said jaws operate to engage corresponding vertical frame members of the at least one wheeled cart; and
> <u>locking means for locking the at least one wheeled cart to at least one of the jaws, wherein the locking means includes a moveable pin positionable across an open portion of one of the two jaws</u>.

'694 patent, col. 7, l. 57 - col. 8, l. 8 (emphasis added). Claim 1 of the '379 patent, representative of the claims at issue in that patent, recites:

> 1. A vehicle for moving shopping carts, comprising:
> (a) a chassis supported by at least two wheels;
> (b) a shopping cart coupler mounted to the chassis releasably attaching at least one shopping cart or a shopping cart train;
> (c) an electric motor supported by said chassis powering said vehicle in response to a drive signal;
> (d) a control panel having a mode selector selecting between a plurality of operational modes, including a manual mode and a remote mode;

(e) at least one remote control device generating and transmitting an operator signal to operate the vehicle in the remote mode, the operator signal including a target speed value;

(f) a manual control device generating and transmitting an operator signal and a stop signal to operate the vehicle in the manual mode;

(g) a receiver on the vehicle communicating with the remote control device to operate the vehicle in the remote mode;

(h) a controller on the vehicle controlling vehicle movement in response to the operator signal, said controller comprising:

i. a signal receiver connected to the receiver, the signal receiver receiving the operator signal;

ii. a motor switching circuit generating a motor interface signal in response to the operator signal;

iii. a motor interface circuit receiving the motor interface signal from the motor switching circuit and generating a drive signal to power the motor;

iv. a speed sensing circuit generating a present speed signal; and

v. a speed regulating circuit coupled to the motor interface circuit, wherein the speed regulating circuit is operative to modify the drive signals in response to changes in the present speed signal such that the present speed signal approaches one of the at least one target speed, whereby the speed of the vehicle tends to be maintained substantially constant during the attachment and release of the one or more shopping carts or shopping cart trains coupled to the vehicle

(i) a brake controller operative to drive the electric motor in an opposite direction in response to the stop signal.

'379 patent, col. 13, ll. 14-58 (emphasis added).

Two claim limitations at issue in this case are "locking means," in the '694 patent, and "a brake controller," in the '379 patent. The district court construed the locking means limitation to require "a pin that can be moved across an open portion of one of the two jaws to prevent the vertical frame member of the wheeled cart from being removed from the jaw." Finding this element not present in the Golden Retriever, the court determined that the Golden Retriever did not infringe the '694 patent. As to the brake controller limitation, the court adopted the following construction: "[t]he brake controller is an electrical device or mechanism that in response to a stop signal applies power to the motor to command the motor to rotate in an opposite direction." With

05-1056, -1070                          3

respect to this term, the court identified the dispositive issue as "whether any of the Golden Retriever braking functions both respond to a stop signal <u>and</u> command the motor to rotate in an opposite direction." Answering this question in the negative, the court found that the Golden Retriever did not infringe any of the claims of the '379 patent.

As to Ameritek's assertions that the '379 and '694 patents were invalid under 35 U.S.C. §§ 102, 103, the district court ruled that Ameritek could not challenge the validity of the patents based on the doctrine of assignor estoppel.

Dane appeals the district court's claim construction and subsequent infringement determinations, and Ameritek cross appeals the district court's finding of the applicability of assignor estoppel. We have jurisdiction pursuant to 28 U.S.C. § 1292(c)(1).

II

We review a district court's grant of summary judgment without deference. Kemco Sales, Inc. v. Control Papers Co., 208 F.3d 1352, 1359 (Fed. Cir. 2000). Summary judgment is appropriate when the record shows that no issues of fact remain and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The claim construction underlying a district court's grant of summary judgment is a matter of law that we review de novo. AFG Indus., Inc. v. Cardinal IG Co., Inc., 239 F.3d 1239, 1244 (Fed. Cir. 2001). The determination of whether a patent claim reads on an accused product is a question of fact. Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999).

Finally, we review the issue of assignor estoppel under an abuse of discretion standard. Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1579 (Fed. Cir. 1993).

III

A

An infringement analysis involves two steps: "the proper construction of the asserted claim and a determination as to whether the accused method or product infringes the asserted claim as properly construed." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). Here the district court concluded that the brake controller claimed in the '379 patent was "an electrical device or mechanism that in response to a stop signal applies power to the motor to command the motor to rotate in an opposite direction." To the extent the district court required that the brake controller command the motor to physically rotate in an opposite direction, it erred.

The '379 patent claims "a brake controller operative to drive the electric motor in an opposite direction in response to the stop signal." Neither party disagrees with the general principle behind how braking occurs in the claimed invention: a torque is generated which acts to oppose the direction of the rotation of the armature ("negative torque"), thereby acting as a brake and slowing the speed of the armature. Thus, it is the creation of the negative torque that is meant by the phrase "drive the electric motor in the opposite direction." This construction is supported by the specification, which repeatedly refers to "dynamic braking." See '379 patent, col 2, ll. 16-18 ("The motor utilizes dynamic braking for stopping the vehicle."); '379 patent, col. 9, ll. 46-47 ("[T]he controller 184 invokes the dynamic braking function."); '379 patent, col. 12, ll. 12-13

("When the pedal 19 is released, dynamic braking action slows the unit to a stop . . . ."). One of ordinary skill in the art would appreciate that "dynamic braking" describes generally a form of braking in which the current in the armature is reversed to create a negative torque and thereby brake the motor. It does not call for the direction of the physical rotation of the armature to change. Indeed, there is nothing in the patent's claim language or written description to suggest that the controller itself must directly command the motor to physically rotate in the opposite direction.

Dane is correct in its identification that "the physical <u>rotation</u> of the motor and the force that <u>drives</u> the motor—the torque—are distinct phenomena that may operate in opposite directions at the same time." As explained above, the claim limitation does not require the controller to command the motor to physically rotate in the opposite direction.

Given the arguably ambiguous language of the district court's claim construction, the parties also dispute whether the court did in fact read a physical rotation limitation into its claim construction. The imposition of such a limitation is evident by the court's infringement analysis. The court stated that the "dispositive issue is whether any of the Golden Retriever braking functions both respond to a stop signal <u>and</u> command the motor to rotate in an opposite direction." In determining that one form of braking performed by the Golden Retriever, restraint braking, did not meet the claim limitation, the court stated "[r]estraint braking occurs in response to a stop signal, <u>but the motor rotates in the same direction as it slows to a stop</u>" (emphasis added). Similarly, when discussing regenerative braking, the court noted that

> Regenerative braking neither occurs in response to a stop signal nor commands the motor to rotate in an opposite direction[, because a]lthough

the vehicle ultimately moves in an opposite direction in response to the operator's command, regenerative braking only slows the motor to at or near zero. At that point, regenerative braking ends and the drive mode begins. Thus reversing directions entails two modes: the regenerative braking that slows the vehicle in one direction, and the drive mode that powers the vehicle in the opposite direction. It is the drive signal that commands the motor to operate in the opposite direction – not the brake signal.

This clearly suggests that the district court viewed physical rotation of the motor in the opposite direction as a requirement of the claim limitation.[1]

Accordingly, we reverse the district court's claim construction to the extent it requires physical rotation of the motor in the opposite direction and remand for further proceedings consistent with our determination. We reach no conclusion as to whether the plug, restraint, and regenerative braking of the Golden Retriever can be considered dynamic braking or fall within the correct claim construction. Such determinations must be made by the district court in the first instance.

B

Dane also asserts that the district court committed reversible error in applying the two jaws element and the locking means element of the '694 patent to the Golden Retriever. We agree with the district court that the Golden Retriever does not have a "locking means" as construed by the district court, and therefore affirm its finding of noninfringement.

---

[1] In discussing the third form of braking available in the Golden Retriever, the court makes a single statement that could possibly suggest that physical rotation in the opposite direction is not required: "[p]lug braking reverses the field to initiate braking, but it does not occur in response to a stop signal." However, this single statement does not overcome the court's more detailed analysis as to how physical rotation of the motor is necessary to meet the claim limitation.

The district court construed the locking means claim limitation to mean "a pin that can be moved across an open portion of one of the two jaws to prevent the vertical frame member of the wheeled cart from being removed from the jaw."

As the district court noted, the "locking means element" requires a pin that moves across an open portion of one of the jaws. The court further noted:

> Depending on the version of the Golden Retriever, either a pin or a plate is placed across the opening at the top of the cup to retain the wheel in the cup. Because a cup is not a jaw, a pin placed across the top of a cup is not the same as a pin moving across the open portion of a jaw.

We agree. A pin traversing the top of a cup, considered to be merely one side of the jaw, is not the same as extending across the open portion between the two sides of the jaw, which is what the claim requires. Accordingly, we affirm the district court's grant of summary judgment of noninfringement of the '694 patent.

IV

In its cross appeal, Ameritek asserts that the district court erred in finding Ameritek was precluded from challenging the validity of the '379 and '694 patents under the doctrine of assignor estoppel. "Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity." Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220, 1224 (Fed. Cir. 1988). "Thus, an assignor and parties in privity with the assignor are estopped or barred from asserting invalidity defenses." Pandrol USA, LP v. Airboss Ry. Prods., Inc., No. 04-1069, 2005 WL 2264918, at *5 (Fed. Cir. 2005) (citing Diamond Scientific, 848 F.2d at 1224). Mere employment is insufficient to establish privity. However, a company may be in privity with an assignor if the company

avails itself of the assignor's knowledge and assistance to conduct the infringement. Intel Corp. v U.S. Int'l Trade Comm'n, 946 F.2d 821, 839 (Fed. Cir. 1991).

There is no dispute that 1) Stephan Dominguez ("Dominguez") was an inventor of the claimed subject matter; 2) Dominguez assigned the '379 and '694 patents to Dane; 3) Ameritek was formed to compete directly with Dane; and 4) Dominguez joined Ameritek as its sole employee within two months of its inception. Additionally, Dominguez was hired specifically to design and develop a cart retriever machine to compete with Dane. His direct involvement in Ameritek led to the alleged infringement, as Ameritek clearly availed itself of his knowledge and assistance to conduct the alleged infringement. Accordingly, we cannot say the district court abused its discretion in finding that Ameritek was estopped from challenging the validity of the '379 and '694 patents.

Ameritek argues that the doctrine of assignor estoppel should not be applied here for equitable purposes. Its premise lies in the argument that Dane should not be permitted to hide behind the doctrine of assignor estoppel when it, through its president Dan Johnson, engaged in inequitable conduct during the prosecution of the '379 and '694 patents after the invention had been assigned. Ameritek contends that under these facts, there is no unfairness in holding Dane accountable and application of assignor estoppel is unwarranted.

This argument is not properly before us for review. Ameritek did not plead unenforceability in its counterclaims; rather, it pled invalidity based on 35 U.S.C. §§ 102, 103. Ameritek did seek leave to amend its pleadings to add a counterclaim for unenforceability; however, the district court did not rule on this motion

and the motion became moot in view of the judgment before us on review. Accordingly, we do not reach the issue of whether this case warrants formulation and application of an exception to the doctrine of assignor estoppel.

V

For the reasons stated above, we reverse the district court's grant of Ameritek's motion for summary judgment of noninfringement of the '379 patent and remand for further proceedings, and we affirm the district court's grant of Ameritek's motion for summary judgment of noninfringement of the '694 patent and its grant of Dane's motion for partial summary judgment that the '379 and '694 patents are not invalid.